TAVAI V. KÁLIOPA, Plaintiff,

v.

VITALE SILAO, DOREEN SILAO, JACK HARRIS, MEKE HARRIS, Defendants.

High Court of American Samoa
Land and Title Division

LT No. 6-79

February 16, 1983

Before GARDNER, Chief Justice, Presiding, TAUANU'U, Chief Associate Judge and FAOA, Associate Judge.

Counsel: For the plaintiff, Roy J.D. Hall, Jr.
For the defendants, Tauivi Tuinei

In 1968 Tavai Esela was the senior matai of the Tavai Family in the village of Pago Pago. The family owned certain communal land known as "Molisamoa." In 1968 Tavai Esela gave Defendants Vitale and Doreen Silao permission to use a portion of that land for the purpose of building a dwelling upon it. A separation agreement was executed, the Silaos constructed a dwelling house on the property and, we assume, lived in that house. Then in 1976 the Silaos moved to the United States and rented the house to third parties. This was without the permission of the matai.

For a considerable period of time the Silaos received rent for the house from these third parties. The present tenant pays no rent to the Tavai Family. The Silaos have failed to render services to Tavai Esela or to Plaintiff Tavai V. Kaliopa, successor to Tavai Esela. Tavai V. Kaliopa testified that the Silaos were not members of the Tavai Family although we note from defendants' answers to interrogatories that Doreen Silao claims her mother's brother married Tavai Esela's sister.

DECISION

The case has been briefed and argued at length. Plaintiffs contend that, under well-established principles of law, since defendants have not rendered service to the matai and, since a license was created, the matai or licensor may revoke the license and retake the property without any compensation for improvements. Defendants contend that, under equally well-established principles of law, because of the improvements to the land and the separation agreement, the license is now irrevocable and that they now own the property free and clear.

It should come as a surprise to no one that we agree with neither contention.

As Justice Murphy has often commented, the so-called law in the field of communal land ownership in American Samoa consists of a series of ad hoc decisions in which various courts have come to varying results in differing factual situations. This has resulted in what Justice Murphy calls the Law of Convenience.[1] This is not at all surprising as, during the last 83 years

---

[1] By the Law of Convenience, each case stands on its own feet as the court

1

the members of this court have tried to blend a thousand-year-old Polynesian culture with a contemporary legal system which has its roots in the English common law.

The Treaty of Cession guaranteed the Samoan way of life and the Constitution of American Samoa advises that it is our responsibility to protect persons of Samoan ancestry against destruction of the Samoan way of life. A.S.C.A. section 1.0201 states that we should apply the common law of England "as is suitable to conditions in American Samoa." Section 1.0202 states that the customs of the Samoan people are to be preserved. A picture emerges that is bright and clear—the protection of the Samoan way of life is the court's primary responsibility.

The twin cornerstones of the Samoan way of life are communal land tenure and the matai system. Each is essential to the other. Without the matai system to administer it, the communal land system becomes anarchy. Without the communal land system, there is no reason for a matai.

In American Samoa, the family owns the land. A matai, selected by, and subject to removal by, the family, allots the land to family members who pay a type of compensation comparable to rent in the way of service to the matai—actually, to the family. In return the matai undertakes the protection and well-being of the family members. Such is the basic Samoan custom and tradition.[2]

We western judges, schooled in the common law, valiantly attempt to support the matai system and communal land tenure and, in so doing, all too often confuse the issues by attempting to apply common law labels with which we are comfortable to factual situations which are controlled by Samoan custom and tradition. Accordingly, the average opinion sets forth a factual situation, states the controlling Samoan custom, then attempts to apply a common law principle[3]—together with supporting citations—in an attempt to justify the decision. We should stop trying to rationalize Samoan customs and traditions by recourse to common law principles and precedents. We should accept Samoan customs and traditions as controlling authority. These customs and traditions need no common law support. Actually common law principles, which are based on private ownership of land, are often the antithesis of Samoan customs and traditions which are based on communal land tenure.

For example, previous courts have labelled transactions such as the one involved in this case a license. However, at common law license is granted

---

simply arrives at an equitable disposition of the case. Actaully, the Law of Convenience isn't all bad. Unhappily, fa'a Samoa and stare decisis are often irreconcilable. Establishing a binding precedent based on the shifting sands of custom and tradition handed down through the centuries by word of mouth is a chancy undertaking. Thus, in all candor, prior decisions of the high court are of precious little value as precedent in land and title cases—a line which the ever-eloquent Justice Murphy will undoubtedly label as Gardner's death knell to the doctrine of stare decisis in American Samoa.

[2] One might ask, "Just where does the concept of individually-owned land fit into the picture." It doesn't. (See Justice Murphy's discussion of individually-owned land in Leuma v. Willis (1980) 1 A.S.R.2d 48.)

[3] Somehow, judges and lawyers are not comfortable unless they can affix a citation of authority to every concept expressed, no matter how trite or banal that concept may be. This practice becomes a kind of security blanket and inhibits independent thought. To paraphrase Emerson, a slavish reliance on precedent is the hobgoblin of little minds.

by a private person, is revocable at any time at the will of the licensor and does not survive beyond the death of the licensor. . Here, the matai has no personal interest in the land. The land is owned by the family. Some perplexing questions arise. Why isn't it privilege? Can a matai give a license? Can the family? If so, how and in what form? If either can, what is the duration of the license? If expenditures are made in reliance on the license does it ripen into an easement? An easement is an interest in land. What kind of an interest in land? Individual? Why not a profit? Obviously, applying common law principles to a situation such as this opens a real can of worms.

So why not call the transaction by its Samoan name, "tofi," the act by which a matai assigns a family member a parcel of communal land? We should then treat it as a Samoan institution which has no counterpart in the common law. So, without recourse to common law principles we then decide the case on Samoan customs and traditions. We proceed to do so.

We will assume for the purpose of this decision that the defendants are family members although the record is to the contrary. Even so they are not entitled to retain the use of that land. The following Samoan customs and traditions control, without resort to the common law.

For some seven years they have resided in the United States. An assignee abandons the land when he moves from it. Maea v. Tali (1981) LT 95-79. Additionally, defendants have failed to render services to the matai as is their duty. Leapaga v. Westbrook (1967) 4 A.S.R. 748. Under either situation the matai has the power to evict the user of communal property. Itumalo v. Falealili (1980) LT 33-79. Therefore, plaintiff has the authority to evict these defendants from the land in question and the land will be restored to the family.

We find the existence of the separation agreement meaningless in the context of this case. That separation agreement merely separated the house from the land so that the house could become meaningful collateral for lending institutions. By this device they avoided the law of fixtures (a common law concept), the home did not become affixed to communal land and thus worthless as collateral. In no way did the separation agreement change the status of the parties vis-a-vis the use of the communal land.

Thus, the family owns and has the use of the land.

. The house is left dangling. It is clearly the separate personal property of the defendants. Since Samoan customs and traditions did not contemplate a separation agreement, much less palagi-type houses, we find no controlling authority in those customs and traditions. Instead we rely on A.S.C.A. section 3.0242, which admonishes the land and title division of the high court to act in such manner as it considers most consistent with "natural justice and convenience"--a wonderfully imprecise standard which affords the utmost flexibility in arriving at equitable results consistent with the Samoan way of life.[4]

Thus, as to the house, the decision is as follows:

1. Defendants may remove the house and, if they chose to follow this avenue, they must do so within thirty days of the date of this opinion.

2. If the defendants do not chose to remove the house, the parties may agree on a mutually acceptable price by which the family will buy the house. This decision must be made within sixty days of the date of this opinion.

3. If neither (1) nor (2) transpires the court will appoint a referee to determine the fair market value of the house and sell it to the family. In this respect the referee will be instructed to determine the fair market

---
[4] If authority is needed for the Law of Convenience, this is it.

value of the house and to deduct from that current fair market value (or give the family credit against that fair market value) the rental value of the land from the date of construction of the house until the date of appraisal. Defendants have had the use of this property during this period and must pay a fair rental to the family for the use of the land. Thus, if the house has a fair market value of $30,000 and the land has a rental value of $100 per month for the 15 years of its existence, $18,000 is to be deducted from the fair market value for rent, leaving a price of $12,000 which must be paid to the defendants by the family. Of course, defendants are entitled to credit for any rent actually paid. Any lien the bank has against the house, together with the referee's fees, must be paid prior to any distribution to defendants.

Talalelei Tulafono will be appointed referee to carry out the judgment of the court, without bond, and the court will determine the reasonable value of his service.[5]

---
[5]Considering the amount of time the referee will necessarily expend in carrying out this judgment and the cost of this time, it behooves the parties to settle this matter under option (2).